UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| LETISHA M., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-904-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Letisha M. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 28).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 18, 21. Despite being granted multiple extensions to submit a reply brief, Plaintiff did not submit a reply. *See* ECF Nos. 22-27. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 18) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 21) is **GRANTED**.

**BACKGROUND**

Plaintiff protectively filed applications for DIB and SSI on March 7, 2019, alleging disability December 27, 2013 (the disability onset date),[1] due to asthma, COPD, and several other physical ailments. Transcript ("Tr.") 140-41, 289-301, 324. The claims were denied initially on July 18, 2019 (Tr. 200-09), and again on reconsideration on October 2, 2019 (Tr. 212-35), after which Plaintiff requested a hearing (Tr. 236-37). On April 23, 2020, Administrative Law Judge Dale Black-Pennington ("the ALJ") conducted a telephonic hearing.[2] Tr. 39, 57-89. Plaintiff appeared and testified at the hearing and was represented by Felice A. Brodsky, an attorney. *Id.* William T. Slaven, an impartial vocational expert, also appeared and testified. *Id.*

The ALJ issued an unfavorable decision on October 21, 2020, finding that Plaintiff was not disabled since January 31, 2018, the day after the prior unfavorable decision was issued, through the date of the decision. Tr. 39-49. On June 15, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's October 21, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

**LEGAL STANDARD**

**I.    District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive"

---

[1] Plaintiff previously filed applications for DIB and SSI on May 8, 2015, also alleging disability beginning December 27, 2013. Tr. 90-113, 117. An unfavorable decision was issued on January 30, 2018 (Tr. 114-27), which Plaintiff did not further appeal. Tr. 132-39. Because Plaintiff was previously found not disabled through January 30, 2018, the relevant period for the current application began on January 31, 2018, the day after the prior unfavorable determination. Tr. 39.

[2] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 15, 312.

if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her October 21, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The claimant has not engaged in substantial gainful activity since January 31, 2018, the date after a prior unfavorable decision was issued (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: asthma, chronic obstructive pulmonary disease, history of bilateral pulmonary embolic disease, morbid obesity, obstructive sleep apnea, and Prothrombin gene mutations (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)[3] except: claimant must avoid concentrated exposure

---

[3] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

to humidity, wetness, temperature extremes, dust, fumes, smoke, odors, and other known respiratory irritants; and claimant must avoid exposure to dangerous hazards, such as sharp instruments, unprotected heights, and dangerous machinery.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 25, 1981 and was 32 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, since January 31, 2018, the day after a prior unfavorable decision was issued, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 39-48.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on March 7, 2019, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 49. The ALJ also determined that based on the application for supplemental security income protectively filed on March 7, 2019, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ "effectively rejected" the medical opinions of record because she found a more restrictive RFC than assessed by any physician, and therefore, substituted her own lay medical judgment regarding Plaintiff's physical limitations. *See* ECF No. 18-1 at 15-26. Plaintiff also argues that all the medical opinions "became

stale" based on Plaintiff's July 2020 hospitalization, creating an evidentiary gap in the record. *See id*. In her second point, Plaintiff argues that the ALJ erred by failing to evaluate the August 2017 opinion of treating nurse practitioner Kimberley Wilson ("Ms. Wilson"). *See id*. at 26-29.

In response, the Commissioner argues that substantial evidence supports the ALJ's RFC determination. *See* ECF No. 21-1 at 11-22. The Commissioner also argues that the ALJ properly relied on three medical opinions of record, and the RFC was not required to exactly correspond to any single opinion. *See id.* at 12-17. With respect to Plaintiff's second point, the Commissioner responds that the ALJ was not required to consider Ms. Wilson's opinion because it was rendered during the period Plaintiff was previously found to be not disabled. *See id*. at 20-21.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ thoroughly considered the evidence of record, including the opinion evidence and Plaintiff's treatment history, and her finding that Plaintiff was not disabled was supported by substantial evidence.

In her March 7, 2019 application for benefits, Plaintiff alleged she could not work due to severe asthma, COPD, two blood clotting disorders, bilateral pulmonary embolisms, Factor V Leiden, eye problems, morbid obesity, pseudo tumors, a precancerous tumor, and sleep apnea. Tr. 324. She listed her height as 5'1" and weight as 353 pounds. Tr. 324. Plaintiff stated that she stopped working on December 27, 2013 because of her medical conditions. Tr. 324. In a disability

report received on November 22, 2019, Plaintiff indicated that she began receiving treatment for several mental health diagnoses, including anxiety, depression, and posttraumatic stress disorder. Tr. 371.

The record reflects that Plaintiff was diagnosed with asthma since birth. Tr. 825. In 2016, she was found to have hypercoagulability due to Factor V deficiency. *Id*. In 2018, she was diagnosed with COPD. *Id*. The record also notes several hospitalizations for asthma and/or shortness of breath. *Id*. However, most of these were prior to the current relevant period.  For example, on January 10, 2015, Plaintiff reported to the Emergency Department ("ED") at DeGraff Memorial Hospital ("DeGraff"), complaining of shortness of breath for the past several days. Tr. 1118, 1120. Plaintiff was still wheezing after being nebulized with Albuterol and was admitted for further stabilization. Tr. 1122. Her asthma exacerbation improved, and she was discharged on January 12, 2015, with instructions to follow up with her primary care physician. Tr. 1120.

A chest CTA[4] taken on January 16, 2016 indicates that Plaintiff was also an inpatient at DeGraff from January 16, 2016 to January 20, 2016, for complaints of chest tightness and shortness of breath. Tr. 1340. Other than the CTA report, however, there appear to be no further records of this hospitalization in the administrative record. The CTA noted fairly extensive bilateral pulmonary embolic disease and some, but not all, features suggestive of right heart strain. Tr. 1227, 1339 1340. Plaintiff also had ED visits in February 2016 and June 15, 2016, for similar complaints. Tr. 1194, 1536.

Plaintiff has treated with pulmonologist Nashat H. Rabadi, M.D. ("Dr. Rabadi"), from December 7, 2015 to the present. *See* Tr. 1022-47, 1323-45. On July 25, 2018, Dr. Rabadi noted

---

[4] CTA is computed tomography angiography, a radiologic procedure that uses an injection of contrast material into the blood vessels and CT scanning to help diagnose and evaluate blood vessel disease or related conditions, such as aneurysms or blockages. *See* https://www.radiologyinfo.org/en/info/angioct (last visited May 13, 2023).

that Plaintiff experienced two respiratory exacerbations since her last visit in January 2018, which had improved with prednisone. Tr. 568. Dr. Rabadi also noted that Plaintiff reported an overall stable level of activity and level of exertion and denied any nocturnal symptoms, cough, wheezing, lower extremity edema, chest pain, or hoarseness. *Id*. Dr. Rabadi further noted that Plaintiff weighed 353 pounds, and her BMI was 66.7. *Id*. Otherwise, he noted essentially normal clinical findings. *Id*. Dr. Rabadi recommended that Plaintiff pursue gastric sleeve surgery for weight loss; continued her current anticoagulation treatment; and directed her to return for follow up in four months. Tr. 569.

On September 17, 2018, Dr. Rabadi noted there had been some adjustments to Plaintiff's medications after she was hospitalized recently for a pulmonary embolism. Tr. 570-72. He again noted that Plaintiff reported an overall stable level of activity and level of exertion and denied any nocturnal symptoms, cough, wheezing, or hoarseness. Tr. 571. Aside from some diminished breath sounds, Dr. Rabadi observed largely normal clinical findings. *Id*. He continued Plaintiff's anticoagulation and asthma maintenance treatment and directed her to return for follow up in November. Tr. 572.

On November 21, 2018, Dr. Rabadi similarly indicated that Plaintiff reported an overall stable level of activity and level of exertion and denied any nocturnal symptoms, cough, wheezing, or hoarseness. Tr. 575. Aside from some bilateral wheezing, Dr. Rabadi observed essentially normal clinical findings. Tr. 576. He continued Plaintiff's medications and directed her to return for follow up in six months. Tr. 576-77.

On May 16, 2019, Plaintiff underwent a consultative internal medicine examination with Nikita Dave, M.D. ("Dr.  Dave").  Tr. 825-28. Dr. Dave noted that Plaintiff was morbidly obese, but she was in no acute distress; her gait was normal; her squat was half of normal; and she was

able to walk on her heels and toes without difficulty. Tr. 826. Although Plaintiff needed no help changing for the examination or getting on and off the examination table, Dr. Dave noted that, after completion of that section of the examination, Plaintiff experienced shortness of breath and a tachypnea[5] rate of about 30, which took several minutes to return to her baseline of 18. *Id.* Plaintiff had full range of motion in her cervical spine, shoulders, elbows, forearms, wrists, hips, knees, and ankles; range of motion in her lumbar spine was limited to 20 degrees of forward flexion and 15 degrees of lateral flexion bilaterally; straight leg raising was negative bilaterally; and strength was 5/5 in the upper and lower extremities. Tr. 827. Dr. Dave detected no muscle atrophy or sensory deficits but noted mild non-pitting edema in the lower legs and extreme tenderness in the lower legs and shins; hand and finger dexterity were intact; and grip strength was 5/5 bilaterally. *Id.* Dr. Dave observed essentially normal pulmonary and respiratory findings. *Id.*

Dr. Dave opined that Plaintiff had moderate limitations for prolonged walking and activities requiring greater than light to moderate sustained physical exertion due to obesity, COPD, and possibly prior PE; she should avoid smoke, dust, fumes, inhalants, chemicals, extremes of temperature, humidity, outdoor allergens, and environmental allergens particularly in the summer; and she should avoid sharp instruments and machinery due to anticoagulant status requiring higher INR[6] due to Factor V deficiency. Tr. 604.

Susan Santarpia, Ph.D. ("Dr. Santarpia") performed a consultative psychiatric evaluation on May 16, 2019. Tr. 820-23. Plaintiff reported fluctuating dysphoric mood, crying spells, loss of

---

[5] Tachypnea is defined as a breathing rate that is higher than the normal breathing rate. The normal breathing rate for an average adult is 12 to 20 breaths per minute. *See* https://www.ncbi.nlm.nih.gov/books/NBK541062/ (last visited May 17, 2023).

[6] INR is the acronym for international normalized ratio, which is a type of calculation based on a prothrombin time ("PT" or "pro time") blood test. PT measures how long it takes for a clot to form in a blood sample. The test is used to help diagnose the cause of bleeding or clotting disorders, and also checks to see if blood-thinning medications are working as they should. *See* https://medlineplus.gov/lab-tests/prothrombin-time-test-and-inr-ptinr/ (last visited May 16, 2023).

usual interest, irritability, excessive apprehension and worry, and restlessness. Tr. 820-21. On examination, Plaintiff's affect was of full range and appropriate; her mood was euthymic; recent and remote memory skills were intact; attention and concentration were intact; and insight and judgment were fair. Tr. 821-22. Dr. Santarpia assessed that Plaintiff was able to understand, remember, and apply simple and complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, coworkers, and the public; sustain concentration and perform tasks at a consistent pace; sustain an ordinary routine and regular attendance at work; regulate her emotions; control her behavior; maintain her well-being; maintain her personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions. Tr. 822. Dr. Santarpia indicated a diagnosis of "other specified depressive disorder with anxious features" and opined that the results of her evaluation appeared consistent with psychiatric problems that did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. Tr. 822-23. She also recommended that Plaintiff consider psychological, psychiatric treatment, noting that Plaintiff had an intake in January and had not returned. Tr. 823.

On July 16, 2019, state agency reviewing psychologist J. Dambrocia Ph.D. ("Dr. Dambrocia), reviewed Plaintiff's file at the time and assessed that Plaintiff had mild difficulties with understanding, remembering, and applying information, mild difficulties with interacting with others, mild difficulties with respect to concentration, persistence, or maintaining pace, and mild difficulties with adapting or managing herself.  Tr. 149-50, 836-38.

On July 18, 2019, state agency reviewing physician D. Chen, M.D. ("Dr. Chen"), reviewed Plaintiff's file at the time and completed a Physical RFC Assessment. Tr. 152-54, 164-66. Dr. Chen assessed limitations consistent with a finding that Plaintiff was capable of performing a range

of light work. Tr. 152. He determined that Plaintiff could never climb ladders/ropes/scaffolds; occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs; and frequently balance. Tr. 152, 164-65. Dr. Chen recommended that Plaintiff avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation and avoid all exposure to hazards such as sharp instruments and machinery due to anticoagulant status requiring higher INR due to Factor V deficiency. Tr. 153, 165.

Plaintiff was seen by Dr. Rabadi on July 24, 2019, for a preoperative respiratory examination for possible gastric bypass surgery. Tr. 844-45. Plaintiff reported that she had not experienced any respiratory exacerbations and had not been on any antibiotics or steroids since her last visit, and she denied coughing, wheezing, hoarseness, palpitation, irregular heartbeat, or chest pain. Tr. 845. Dr. Rabadi observed largely normal clinical findings and opined that Plaintiff was at mild risk for perioperative pulmonary complications. *Id*. He continued Plaintiff's current medications and directed her to return for follow up in six months. *Id*.

A pulmonary function test on September 19, 2019 showed FEV1[7] of 1.58 (57% of predicted) and FVC[8] of 2.06 (61% of predicted), prior to administration of bronchodilators.  Tr. 888. After the administration of bronchodilators, FEVl was 1.82 (65% of predicted) and FVC was 2.27 (65% of predicted). Tr. 888-90. The examiner noted probable restriction and recommended further examination. Tr. 888.

On September 27, 2019, state agency reviewing physician J. Koenig, M.D. ("Dr. Koenig"), reviewed Plaintiff's file at the time and completed a Physical RFC Assessment. Tr. 178-81. Dr. Koenig similarly assessed limitations consistent with a finding that Plaintiff was capable of

---

[7] FEV1, or forced expiratory volume in one second, is the volume of air exhaled in the first second under force after a maximal inhalation. *See id*.
[8] FVC, or forced vital capacity, is the total volume of air that can be exhaled during a maximal forced expiration effort. *See* https://www.aafp.org/pubs/afp/issues/2004/0301/p1107.html (last visited May 15, 2023).

performing a range of light work. Tr. 178, 190. He determined that Plaintiff could occasionally climb stairs and ramps, but can never climb ladders, ropes, or scaffolds. Tr. 179. Dr. Koenig concluded that Plaintiff could frequently balance, but only occasionally stoop, kneel, crouch, and crawl. *Id*. He recommended that Plaintiff avoid concentrated exposure to extreme heat, extreme cold, and respiratory irritants, such as fumes, odors, dusts, gases, and poor ventilation and should avoid all exposure to hazards, such as machinery and heights. Tr. 165.

On July 27, 2020, Plaintiff presented to the ED at Buffalo General Hospital, complaining of worsening shortness of breath, Tr. 1510-12. She also complained of chronic abdominal pain with nausea as well as new left-sided flank pain. Tr. 1515. Plaintiff was diagnosed with bilateral pulmonary emboli due to subtherapeutic INR despite compliance with medications, and she was admitted from July 28, 2020 to July 30, 2020. Tr. 1512-13. Her condition was stabilized with additional anticoagulant therapy, and she was instructed to follow up with her doctor following discharge. Tr. 1513.

As noted above, Plaintiff challenges the ALJ's RFC finding, alleging that the ALJ rejected the medical opinion evidence and substituted her own lay opinion for that of a medical expert regarding Plaintiff's physical limitations. *See* ECF No. 18-1 at 15-25. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2)

(indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)

(The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claim on February 20, 2019, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs

and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Here, the ALJ complied with the regulations, and contrary to Plaintiff's contention, the ALJ thoroughly considered the entire record, including the treatment records, the opinion evidence and Plaintiff's testimony, to formulate an RFC that properly accounted for all of Plaintiff's credible limitations, as supported by the record.

First, Plaintiff incorrectly claims that the ALJ "effectively rejected" all the medical opinions of record. *See* ECF No. 18-1 at 18, 22, 29. To the contrary, the ALJ found Dr. Dave's opinion "generally persuasive" as it was supported by her clinical examination findings and consistent with the record as a whole. Tr. 46; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (stating that supportability and consistency are the most important factors in evaluating medical opinion evidence and that the ALJ will articulate these factors in assessing the persuasiveness of an opinion); *see also* 20 C.F.R. §§ 404.1520c(c)(1), (2), 416.920c(c)(1), (2) (supportability and consistency findings).

The ALJ noted that Plaintiff experienced shortness of breath during the examination but recovered within a few minutes, and her pulmonary and respiratory findings were otherwise essentially normal.  Tr. 46, 825-27.  The ALJ also noted that Plaintiff exhibited limited range of motion in the lumbar spine, mild non-pitting edema in the lower legs, tenderness in the lower legs, and could only squat halfway. *Id*.  As the ALJ noted, however, Dr. Dave's other examination findings were essentially normal, including normal gait with the ability to walk on heels and toes, full range of motion in all joints except the lumbar spine, negative straight leg raising tests, full strength in the upper and lower extremities, and intact hand and finger dexterity with full grip strength. *Id*.

The ALJ also noted Dr. Dave's finding of moderate limitations in prolonged walking and activities requiring light to moderate exertion, as well as her opinion that Plaintiff should avoid respiratory irritants and sharp objects and machinery, and reasonably concluded that Plaintiff had the RFC to perform sedentary work with the additional noted limitations. Tr. 44, 46, 825-27.

Plaintiff argues that Dr. Dave's limitations were "confusing" and not supportive of the ALJ's specific RFC finding. *See* ECF No. 18-1 at 18. Contrary to Plaintiff's argument, however, the Second Circuit and this Court have consistently found that moderate limitations in exertional activities, including sitting, are not inconsistent with the ability to perform sedentary work, just as moderate limitations in standing and walking would not preclude the ability to engage in those activities for up to six hours throughout the workday, as required for light work, particularly when interspersed with normal work breaks. *See Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (moderate limitations supported RFC for light work); *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (RFC finding for light work was sufficiently supported by a consultative examiner's opinion assessing only some moderate limitations); *see also Carroll v. Colvin*, No. 13-

CV-456S, 2014 WL 2945797, *4 (W.D.N.Y. June 30, 2014) (noting that several courts "have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing"); *Harrington v. Colvin*, No. 14-CV-6044, 2015 WL 790756 at *13, 14 W.D.N.Y. Feb. 25, 2015) (moderate limitations in sitting, standing and walking not inconsistent with sitting, standing, and walking six hours a day) (collecting cases). In addition, while sedentary work involves mostly sitting, a morning, lunch, and afternoon breaks are contemplated at about two-hour intervals. *Rodriguez v. Barnhart*, No. 01-cv-7373, 2002 WL 31307167, at *5 (S.D.N.Y. Oct. 15, 2002); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("The regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight.").

Furthermore, the ALJ did not rely solely on Dr. Dave's opinion. He also considered the opinions from state agency physicians Dr. Chen and Dr. Koenig, as well as the medical records from treating pulmonologist Dr. Rabadi, and Plaintiff's own statements about her limitations. Tr. 47. Both Dr. Chen and Dr. Koenig opined that Plaintiff was capable of performing a range of light work, with some additional postural and environmental limitations, including avoiding concentrated exposure to respiratory irritants and avoiding exposure to hazards such as sharp instruments and machinery. Tr. 151-54, 164-66, 178-81. The ALJ found these opinions "somewhat persuasive." Tr. 46-47. Notably, to the extent the ALJ did not find these opinions fully persuasive, it was because she found Plaintiff more restricted than these opinions indicated, *i.e.*, capable of performing sedentary, rather than light work. Tr. 44.

While the RFC does not perfectly match any single medical opinion, this does not mean that the ALJ "effectively rejected" every opinion as Plaintiff claims. Rather, as the Second Circuit

recently reiterated, the RFC does not need to exactly correspond to a particular medical opinion. *Schillo v. Kijakazi*, 31 F.4th 64, 77-78 (2d Cir. Apr. 6, 2022) (affirming where the ALJ declined to adopt the limitations set forth in three treating source opinions, and the RFC finding did not match any opinion in the record). Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record. as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56 (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole).

Here the ALJ properly found the three medical opinions of record "generally" or "somewhat" persuasive in reaching an RFC that was consistent with the record as a whole, and she was not required to adopt any one opinion verbatim in the RFC. *Id*.; *see also Camille v. Colvin*, 652 F. App'x 25, 28 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion as the basis for the RFC but incorporated additional limitations based on *inter alia*, the testimony of Camille that she credited.").

In addition, the ALJ noted that examinations by treating pulmonologist Dr. Rabadi were generally unremarkable, other than isolated findings of diminished breath sounds or wheezing. Tr. 45-46, 566-77, 591-96, 843-46, 1027-30, 1037-40. Dr. Rabadi's treatment notes also indicated that Plaintiff had a stable level of activity and exertion, and she denied nocturnal symptoms, cough, wheezing, or hoarseness. *Id*. Although Plaintiff had a single hospitalization during the relevant period for a pulmonary embolism, as the ALJ noted, her condition stabilized with additional anticoagulant therapy, and she was discharged home with instructions to follow up with her doctor. Tr. 46, 1513-17.

Plaintiff also argues that the ALJ should not have credited Dr. Dave's opined "moderate" limitations in light of examination findings that Plaintiff became short of breath and exhibited tachypnea during the examination. *See* ECF No. 18-1 at 18. However, the ALJ accounted for this finding in the decision, noting that Plaintiff returned to her baseline within several minutes, and Dr. Dave otherwise reported "essentially normal pulmonary and respiratory findings." Tr. 45, 826-28.   Furthermore, the ALJ was not required to rely on this single examination finding to the exclusion of other evidence in the record. As previously discussed, the ALJ also noted that examinations by Plaintiff's pulmonologist were generally unremarkable.  Tr. 45-46, 566-77, 591-96, 843-46, 1027-30, 1037-40.  Based on the foregoing, the ALJ reasonably concluded that the record evidence as a whole supported the range of sedentary work outlined in the RFC. Tr. 44.

Finally, Plaintiff incorrectly claims that the ALJ found the medical opinions in the record were stale.  *See* ECF No. 18-1 at 18. Plaintiff avers that "the ALJ effectively discounted the medical opinions in the record because they became "stale" and "the ALJ effectively conceded that their opinions were "stale"" *Id*.  Plaintiff repeatedly uses the word "stale" in quotation marks as if to suggest that this is a direct quote from the ALJ's decision.  *See id*. However, the ALJ never stated that any opinions were "stale," nor did she make factual findings that could support such a conclusion.  Tr. 46-47.  To the contrary, the ALJ concluded that the opinions were "largely" or "somewhat" consistent with the record .as a whole.  *Id*.

Furthermore, there is no reason for this Court to conclude the opinions were stale. A consultant's opinion is not stale when subsequent treatment notes are not materially different from the medical records reviewed by the consultant. *See Camille*, 652 F. App'x at 25; *see also Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (holding that the ALJ did not err in relying on opinions where there was no indication the "[p]laintiff's

20

condition had significantly deteriorated after the issuance of [the] opinions such that they were rendered stale or incomplete") (internal citations omitted).

Plaintiff argues that that every medical opinion in the record became stale because of her three-day hospitalization in July 2020 for a pulmonary embolism. *See* ECF No. 18-1 at 18-20. However, Plaintiff cites no medical evidence showing that her pulmonary embolism caused a significant deterioration in her condition. *Id*. Notably, the ALJ fully considered this hospitalization and noted that Plaintiff's "condition was stabilized with additional anticoagulant therapy." Tr. 46, 1513-17. *See Luis M. v Comm'r of Soc. Sec.*, No. 1:19-CV-1151, 2021 WL 168475, at **3-5 (W.D.N.Y. Jan. 19, 2021) (holding that a medical opinion was not stale where "newer evidence in the record did not directly contradict the doctor's findings and the ALJ fully analyzed the more recent evidence"). Furthermore, Dr. Dave accounted for Plaintiff's prior history of pulmonary embolism in assessing her limitations, noting that Plaintiff was diagnosed with hypercoagulable disorder in 2016 after a previous pulmonary embolism and was taking anticoagulant medication. Tr. 825, 827. Thus, Plaintiff's single subsequent hospitalization for another pulmonary embolism does not undermine the reliability of Dr. Dave's opinion. *See Camille*, 652 F. App'x at 28 n.4, 5 (an opinion does not become stale when new material is added to the record unless the additional material raises doubts as to the reliability of the opinion). Accordingly, there was no evidentiary gap in the created record, as Plaintiff argues.

Plaintiff's arguments are simply a request for a reweighing of the evidence in her favor, which is inappropriate under the substantial evidence standard of review. *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."); *see also Krull v. Colvin*, 669 F. App'x

31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Accordingly, Plaintiff's argument is without merit.

In her second point of error, Plaintiff argues that remand is required because the ALJ did not evaluate a medical opinion from treating nurse practitioner Ms. Wilson rendered on August 25, 2017 (Tr. 1346-51). *See* ECF No. 18-1 at 26-29. As noted above, in a prior disability decision Plaintiff was found not disabled through January 30, 2018, and the relevant period for the current application begins on January 31, 2018. Tr. 39, 127. Because Ms. Wilson's opinion falls within the period Plaintiff was previously found not disabled, the ALJ was not required to address this opinion, as it did not relate to the period at issue, and instead related to a prior period that was previously adjudicated in a final decision. Furthermore, the ALJ who issued the prior unfavorable decision accorded Ms. Wilson's opinion "limited weight." Tr. 124. Notably, the previous ALJ found Ms. Wilson's opinion persuasive only to the extent it supported sedentary work (*id*.), which is consistent with the RFC here for a reduced range of sedentary work. Tr. 44. Thus, Plaintiff's argument that the ALJ erred with respect to Ms. Wilson's opinion is meritless.

As previously noted, it is Plaintiff who ultimately bears the burden of demonstrating functional limitations that preclude performance of any substantial gainful activity. *See* 20 C.F.R. § 416.945(a)(3) (the claimant is responsible for providing the evidence used in the RFC determination); *see Poupore*, 566 F.3d at 305-06 (The burden is on Plaintiff to show that he cannot perform the RFC as found by the ALJ.). Plaintiff here failed to meet her burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made

by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 18) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 21) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE